**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

| | |
|---|---|
| **BRADY BENNETT,** *individually and on behalf of all others similarly situated,* | |
| | **Case No.** |
| Plaintiff, | |
| v. | **CLASS-ACTION COMPLAINT** |
| **SYMMETRY FINANCIAL GROUP, LLC,** and **QUILITY SOFTWARE APPLICATIONS LLC,** | -and- |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## CLASS-ACTION COMPLAINT

COMES NOW, Plaintiff, Brady Bennett ("Plaintiff" or "Bennett"), by and through counsel, and on behalf of all others similarly situated, brings this class action against Symmetry Financial Group, LLC ("Symmetry") and Quility Software Applications LLC ("Quility," and together, "Defendants"), and in doing so states:

### INTRODUCTION

1. Plaintiff brings this class action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") resulting from the unlawful actions of Defendants.

2. In violation of the TCPA and its corresponding regulations, 47 C.F.R. § 64.1200 *et seq.*, Defendants sent (or caused another to send) multiple telemarketing communications, soliciting their or their partners' goods or services, to Plaintiff and the putative class members' residential telephone numbers.

3. Specifically, throughout 2023 Defendants (or an entity on Defendants' behalf) initiated at least seventeen (17) communications to Plaintiff's cellular telephone number absent his prior express written consent, despite that Plaintiff had long-ago registered his telephone number on the National Do-Not-Call Registry (the "DNC Registry"), and repeatedly did so after being told to stop.

4. Therefore, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing call or text message to residential or cellular telephone numbers registered with the DNC Registry" without the prior express invitation or permission required by the TCPA.

5. Additionally, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d) by delivering more than one advertisement or telemarketing call or text message to residential or cellular telephone numbers while failing to maintain a list of persons who request not to receive such calls made by or on behalf of that person (an "Internal DNC List") or honor Plaintiff's do-not-call requests.

6. Additionally, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement or telemarketing message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

## BACKGROUND ON THE TCPA

7. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

8. A leading sponsor of the TCPA described telemarketing "robocalls" as the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

9. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq.*, affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

10. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

11. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period o, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

12. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

Plaintiff's Class Action Complaint

- 3 -

13.     In fact, in 2021 alone, there were over ***five million complaints*** from Americans to the FTC about unwanted telemarketing calls.[1]

14.     The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount.[2]

## THE PARTIES

15.     Plaintiff is a natural person who at all relevant times resided in Cedar Park, Texas 78613.

16.     Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

17.     Symmetry is a business entity with a principal place of business, head office, or otherwise valid mailing address at 204 Whitson Ave, Suite 2C, Swannanoa, North Carolina 28778.

18.     Symmetry is a person as defined by the TCPA.

19.     Symmetry is a for-profit financial company that sells life insurance and other insurance-related products throughout the United States.

20.     Symmetry's website[3] states:

---

[1]     Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited February 27, 2025).

[2]     *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803 (last visited February 27, 2025).

[3] https://sfglife.com/ (last visited February 27, 2025).

Symmetry Financial GroupTM and Quility® are brand names used by the Quility family of companies. All insurance offers, solicitations, and recommendations made via this website are being made by Quility's licensed affiliated insurance producers, Symmetry Financial Group, LLC (d/b/a Symmetry Insurance Services in CA and NJ, d/b/a Mortgage Protection Insurance Services in IN) and Brandon Ellison. No offers, solicitations or recommendations are being made via this website in any state where one of those named Quility licensees does not have a license. Please see our License Page for a list of all of Symmetry Financial Group, LLC's (d/b/a Symmetry Insurance Services in CA and NJ, d/b/a Mortgage Protection Insurance Services in IN) and Brandon Ellison's license numbers in each state.

21.     Symmetry's website further states:[4]

In its current condition, the life insurance industry needs more digital advancements to keep up with the pace of client and agent needs. Symmetry's parent company, Quility, has made fantastic strides in that arena. From digital platforms that allow Symmetry agents to help more clients to digital experiences that allow them to meet those clients in a virtual space, they are helping shape the future of life insurance.
…
A testament to that influence lies in their proprietary digital products. Here we will break down how the digital experience is shaping client expectations and how Quility's digital products are giving Symmetry agents the tools to exceed them.
…

22.     Defendant Quility is an insurance lead generator with common ownership as Symmetry.

23.     Quility is a "person" as defined by the TCPA.

24.     Quility lists its headquarters as 204 Whitson Ave. Swannanoa, North Carolina- the same address as Symmetry.

25.     Quility provides the "leads" for Symmetry agents to direct their telemarketing activities, through its LeadStream platform.[5]

26.     Quility and Symmetry operated as a joint enterprise at all times relevant hereto.

---

[4]  https://sflife.com/agent-benefits-quility-digital-products/ (last visited February 27, 2025).
[5]       https://sflife.com/leads/ (last visited February 27, 2025).

## JURISDICTION AND VENUE

27.    §Plaintiff's class-action complaint is predicated on the TCPA- a federal statute, 47 U.S.C. § 227, et seq.  Accordingly, a federal question exists and this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

28.    Symmetry and Quility are headquartered in North Carolina at 204 Whitson Avenue Suite 2C Swannanoa, North Carolina 28778.

29.    Accordingly, this Court has personal jurisdiction over this dispute and all parties thereto.

30.    Venue is proper before this Court under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) as both of the Defendants are headquartered in this District and a significant portion of the events giving rise to this action occurred in this District.


## FACTUAL ALLEGATIONS

31.    At all times relevant hereto, Plaintiff is and was the customary user of a residential cellular telephone, the number for which was (512) XXX-5325 (the "5325 Number").

32.    The 5325 Number was registered to Plaintiff as an individual and not to a business, and Plaintiff used the subject cell phone number primarily for residential purposes, including personal communication between family and friends, and other common domestic consumer uses.

33.    Plaintiff registered the 5325 Number on the National Do Not Call Registry ("NDNCR") on or around November 20, 2008.

34.     Plaintiff registered the 5325 Number on the NDNCR to gain the protections of the NDNCR, including the benefit and attainment of solitude from invasive, unwanted, annoying, and irritating telemarketing calls.

35.     Symmetry and Quility are for-profit companies, which sell life insurance policies, among other things.

36.     In order to solicit their life insurance products and services, Defendants engaged in a widescale telemarketing operation, where it placed telemarketing calls to consumers *en masse,* without having first obtained the consumers' prior express written consent.

37.     On or around May 16, 2023, Defendants commenced their campaign of calls to Plaintiff, soliciting life insurance and products.

38.     On May 16, 2023, Plaintiff answered one of these calls soliciting life insurance plans.

39.     Upon answering and receiving an initial sales pitch, Plaintiff responded that he was not interested in learning more about life insurance policies.

40.     Despite Plaintiff expressly requesting the caller stop calling his number, the calls continued.

41.     On multiple occasions, Plaintiff answered the phone and told the caller that the calls were unwanted and to stop calling.

42.     Even after the very first call, where Plaintiff responded very clearly that "No" he was not interested in their life insurance policies, the calls continued with the same repetitious scripted content. The substance of this scripted content included:

> You and your family are qualified for the state approved new life insurance plan that comes with many benefits that you can use while you are alive to pay your mortgage or rent or anything else. Would you be interested in learning more about affordable life insurance plans?

43. Tired of the repeated and annoying calls, on June 15, 2023, and for the sole purpose of identifying the entity responsible for the unwanted telemarketing calls, Plaintiff feigned interest and engaged with the caller.

44. The original caller identified himself as "John with Living Benefits," and after Plaintiff feigned interest in the caller's sales pitch, the call was transferred to a "supervisor" who referred to himself as "Chris Adams", who then advised Defendants' agent "Patraese Livingston" could help Plaintiff.

45. Ms. Livingston then sent a text message Plaintiff with a copy of her business card which displayed a direct affiliation with "SFG," which Patrice explained was Symmetry (i.e. Symmetry Financial Group"), and its affiliated company, Quility.



46. Each of the calls Plaintiff received was substantially similar, featured highly similar scripts, identified the company/companies as "Living Benefits", sold the same life

insurance products and used the same language and cadence. Accordingly, upon information and good faith belief, all of these highly similar calls derived from the same source and they all sought to benefit Defendants.

47.     Defendants failed to provide the actual name of their company/companies in the course of the call campaign to Plaintiff, despite the TCPA's requirement they do so. It was only after Plaintiff went "undercover" that he was able to identify the culprits/beneficiaries.

48.     The communications from Defendants were "solicitations" as defined by the TCPA, as they were made in furtherance of Defendants' efforts to generate profit by selling life insurance policies.

49.     A non-exhaustive list of Defendants' unlawful telemarketing calls to Plaintiff includes:

| No. | Date | Time Received | Calling Number | Identified Calling Party |
|---|---|---|---|---|
| 1 | 5/16/2023 | 2:10 PM CST | 314-756-9810 | John - Living Benefits |
| 2 | 5/16/2023 | 2:45 PM CST | 512-212-4617 | John - Living Benefits |
| 3 | 5/26/2023 | 4:06 PM CST | 714-247-1432 | John Marshall - Living Benefits |
| 4 | 5/31/2023 | 4:26 PM CST | 503-386-5943 | John Adams - Living Benefits |
| 5 | 6/05/2023 | 3:51 PM CST | 302-307-0786 | Living Benefits |
| 6 | 6/05/2023 | 12:07 PM CST | 512-399-2177 | Sam - Living Benefits |
| 7 | 6/05/2023 | 12:56 PM CST | 314-756-1819 | Hazel - Living Benefits |
| 8 | 6/09/2023 | 5:32 PM CST | 217-212-1956 | Paul Adams - Living Benefits |
| 9 | 6/12/2023 | 3:18 PM CST | 320-216-9684 | Chris - Living Benefits |
| 10 | 6/12/2023 | 11:21 AM CST | 213-376-2020 | Paul Adams - Living Benefits |
| 11 | 6/13/2023 | 1:19 PM CST | 512-650-3202 | Living Benefits |

| 12 | 6/15/2023 | 10:12 AM CST | 681-233-2403 | John - Living Benefits |
|----|-----------|--------------|--------------|------------------------|
| 13 | 6/15/2023 | 12:33 PM CST | 512-750-0596 | Living Benefits |
| 14 | 6/15/2023 | 2:57 PM CST | 512-877-8606 | Chris - Living Benefits |
| 15 | 6/19/2023 | 10:57 AM CST | 201-267-1864 | Living Benefits |
| 16 | 6/19/2023 | 1:36 PM CST | 512-456-8144 | Living Benefits |
| 17 | 6/19/2023 | 2:48 PM CST | 512-729-0321 | Living Benefits |

50.     The nature of Symmetry's business involves the sale of goods, and the provision of services, associated with life insurance coverage and other financial or insurance-related products.[6]

51.     The sale of these goods and services are procured by Symmetry, or on its behalf, through telemarketing and the delivery of solicitation calls.

52.     Plaintiff was not seeking or in the market for life insurance.

53.     Plaintiff found the telemarketing communications received to be annoying, irritating, and disruptive.

54.     Upon information and good faith belief, the telephone calls and text messages at issue were sent by Defendants voluntarily.

55.     The telephone calls and text messages at issue were sent for non-emergency purposes.

56.     Plaintiff suffered actual harm as a result of the telephone calls and text messages at issue in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

57.     Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered his cellular telephone number with the DNC Registry.

---

[6]     https://sfglife.com/about-us/ (last visited February 27, 2025).

58. Upon information and good faith belief, because Defendants failed to heed Plaintiff's "stop" instruction and sent numerous to Plaintiff's cellular telephone number after he repeatedly instructed Defendants to "stop", Defendants either (1) failed to implement or maintain an Internal DNC List whatsoever; (2) failed to maintain an adequate written policy for honoring revocation or Internal DNC List requests; (3) failed to adequately train its employees or personnel regarding its Internal DNC List; or (4) failed to adequately record revocation or Internal DNC List requests.

59. Had Defendants maintained or adhered to an Internal DNC List or external do-not-call list, Defendants would not have placed telephone calls to Plaintiff after his "stop" instruction.

60. Plaintiff did not provide prior express written consent or prior express invitation or permission to Defendants to deliver the subject solicitation communications to his cellular telephone number.

61. Plaintiff did not have any existing or established business relationship with Defendants prior to receiving the subject solicitation communications.

62. Defendants did not provide a clear and conspicuous disclosure to Plaintiff that Symmetry or Quility would be making telemarketing calls to his cellular telephone number.

63. Moreover, based on the pervasive nature of Defendants' obfuscation of their identities, Defendants acted willfully and intentionally through their violations of the TCPA.

64. As a result of the foregoing, Plaintiff suffered actual harm as a result of the telephone calls and text messages at issue in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

Plaintiff's Class Action Complaint
- 11 -

65.     Plaintiff suffered additional harm due to his frustration and difficulty in identifying the entity or entities and persons responsible for the unwanted solicitation calls to his cellular telephone number.

## **Direct and Vicarious Liability**

66.     The foregoing acts or omissions were in violation of the TCPA.

67.     Without having had the benefit of discovery to show otherwise, Plaintiff alleges Defendants are directly liable for the calls at issue, or in the alternative, the calls were placed on their behalf by third-party/parties.

*68.*     Symmetry expressly acknowledges that Quility provides the leads for its insurance agents to then sell insurance products to, stating under a heading titled "Focus on selling, not prospecting":[7]

> Symmetry agents have access to Quility LeadStream, the industry's best resource for qualified, interested and compliant leads. Backed by data science, proprietary acquisition strategies, and the experience of generating millions of leads, our agents focus on selling instead of prospecting. This is why Symmetry Financial Group is one of the largest and fastest-growing IMOs in the country for over a decade.

69.     Moreover, Symmetry is a "brand name[] used by the Quility family of companies."

70.     Thus, either Symmetry sent the violative communications, or Quility did as part of its "prospecting" service for Symmetry agents.

71.     Alternatively, if some or all of the communications were made by third-parties on behalf of Defendants, then Defendants would be vicariously liable for those communications.

72.     The TCPA statute expressly permits liability for violative calls made "by or on behalf of the same entity". 47 U.S.C. § 227(c)(5).

---

[7]     https://sfglife.com/leads/ (last visited February 28, 2025).

73.     On May 9, 2013, the FCC determined that contracting with other entities to perform the telemarketing activities was not a basis for avoiding liability, as written within a Declaratory Ruling which held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

74.     Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, and rejected the assertion that a seller's liability requires a finding of formal actual agency or immediate direction and control over third parties who place a telemarketing call. *Id.*, at 6587 n. 107.

75.     The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

76.     Plaintiff "sensibly assumed" or inferred the telemarketing communications received were from or on behalf of Defendants because one of the calls was transferred to a licensed Texas insurance broker, who provided a copy of her business card that showed an explicit affiliation with "SFG", which the broker explained was "Symmetry Financial Group."

Plaintiff's Class Action Complaint

- 13 -

77. Further, Plaintiff stated in that call "I've never heard of them," prompting the broker to ask if Plaintiff has heard of "Quility."

78. Defendants may have hired, encouraged, permitted, or enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiff and only known to Defendants.

79. Defendants' third-party telemarketers, if any, had actual and/or apparent authority to act on Defendants' behalf.

80. Defendants ratified the violations of the TCPA by its agents by accepting leads and deriving profit from sales arising out of unlawful telemarketing operations.

81. Defendants acted as principals to their telemarketing agents, whose identity or identities are unknown at this time.

82. Defendants are not permitted under the law to outsource or contract its way out of liability by directing and benefitting from its agents' TCPA violations.

83. For the counts identified below, to the extent Defendants initiated one or more unlawful communications directly, then Defendants are directly liable for each violative call.

84. Alternatively, for the counts identified below, to the extent any call was made by a third-party agent or entity acting on Defendants' behalf, then Defendants are vicariously liable for encouraging or benefitting from the violative conduct of such an agent or entity.

## CLASS ALLEGATIONS

85. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated and as a representative of the following classes (the "Classes"):

**Federal Do-Not-Call Registry Class:**

All persons throughout the United States (1) to whom Symmetry Financial Group, LLC or Quility Software Applications LLC placed, or caused to be placed, more than one telephone call within a 12-month period, promoting Symmetry Financial Group, LLC's or Quility Software Applications LLC's, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Symmetry Financial Group, LLC or Quility Software Applications LLC delivered, or caused to be delivered, at least two of the telephone calls within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Internal Do-Not-Call List Class:**

All persons throughout the United States (1) to whom Symmetry Financial Group, LLC or Quility Software Applications LLC placed, or caused to be placed, more than one telephone call within a 12-month period, promoting Symmetry Financial Group, LLC's or Quility Software Applications LLC's, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Symmetry Financial Group, LLC or Quility Software Applications LLC delivered, or caused to be delivered, at least two of the telephone calls within the 12-month period, (3) who previously instructed Symmetry Financial Group, LLC or Quility Software Applications LLC not to call them or deliver text messages to them, (4) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

All persons and entities throughout the United States (1) to whom Symmetry Financial Group, LLC or Quility Software Applications LLC placed, or caused to be placed, more than one telephone call within a 12-month period, promoting Symmetry Financial Group, LLC's or Quility Software Applications LLC's, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Symmetry Financial Group, LLC or Quility Software Applications LLC delivered, or caused to be delivered, at least two of the telephone calls within the 12-month period, (2) where the subject caller did not state the name of the individual caller, the name of Symmetry Financial Group, LLC or Quility Software Applications LLC, and a telephone number or address at which Symmetry Financial Group, LLC or Quility Software Applications LLC may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

Plaintiff's Class Action Complaint
- 15 -

86.     Excluded from the Classes are Defendants, their officers, directors, managers, and members, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

87.     Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

88.     The exact number of members of the Classes are unknown to Plaintiff at this time and can be determined only through appropriate discovery.

89.     The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

90.     In addition, the members of the Classes are identifiable in that, upon information and belief, their cellular telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties.

91.     Plaintiff's claims are typical of the claims of the members of the Classes.

92.     As it did for all members of the Federal Do-Not-Call Registry Class, Defendants placed telephone calls to Plaintiff's telephone number more than thirty days after Plaintiff registered his cellular telephone number with the DNC Registry without obtaining prior express written consent.

93.     As it did for all members of the Internal Do-Not-Call List Class, Defendants placed telephone calls to Plaintiff's telephone number without previously consulting or cross-referencing its own internal do-not-call list(s), or, in the alternative, Defendants did not maintain such a list.

94.     As it did for all members of the Sender Identification Class, Defendants delivered placed telephone calls to Plaintiff's telephone number where the subject telephone calls did not

Plaintiff's Class Action Complaint
- 16 -

state the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted.

95.     Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

96.     Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

97.     Plaintiff suffered the same injuries as the members of the Classes.

98.     Plaintiff will fairly and adequately protect the interests of the members of the Classes.

99.     Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

100.    Plaintiff will vigorously pursue the claims of the members of the Classes.

101.    Plaintiff has retained counsel experienced and competent in class action litigation.

102.    Plaintiff's counsel will vigorously pursue this matter.

103.    Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

104.    The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

105.    Issues of law and fact common to all members of the Classes are:

       a.      Defendants' conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

Plaintiff's Class Action Complaint
- 17 -

b.    For the Federal Do-Not-Call Registry Class, Defendants' practice of placing telephone calls, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

c.    For the Internal Do-Not-Call List Class, Defendants' practice of placing telephone calls, for solicitation purposes, without consulting or cross-referencing against any internal do-not-call lists, including whether Defendants maintained any such lists;

d.    For the Sender Identification Class, Defendants' practice of placing telephone calls, for solicitation purposes, without identifying the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted;

e.    Defendants' violations of the TCPA; and

f.    The availability of statutory penalties.

106.    A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

107.    If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

108.    The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

109.    The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

Plaintiff's Class Action Complaint

- 18 -

110.    These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

111.    The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

112.    The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

113.    There will be no extraordinary difficulty in the management of this action as a class action.

114.    Defendants acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

## COUNT I
### Violation of 47 U.S.C. § 227(c)(5)
### On behalf of the Federal Do-Not-Call Registry Class

115.    Plaintiff incorporates by reference the allegations set forth above.

116.    The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

117.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

Plaintiff's Class Action Complaint
- 19 -

118.     The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

119.     In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5)(A).

120.     By calling Plaintiff and the putative class members after their numbers were registered on the National Do Not Call Registry, Defendants violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

121.     Defendants knew or should have known that Plaintiff and the putative class members had their numbers registered on the Do Not Call Registry.

122.     Plaintiff and the putative class members are entitled to damages of $500.00 per violation for each call placed by Defendants and up to $1,500.00 per violation if the Court finds Defendants willfully violated the TCPA.

### COUNT II
### Violation of 47 U.S.C. § 227(c)(5)
### On behalf of the Sender Identification Class

123.     Plaintiff incorporates by reference the allegations set forth above.

124.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

Plaintiff's Class Action Complaint

- 20 -

125.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

126.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

127.    Defendants violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

128.    Defendants therefore violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Sender Identification Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4).

129.    As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4), Plaintiff, and the members of the Sender Identification Class, are entitled to damages in an amount to be proven at trial.

//

Plaintiff's Class Action Complaint
- 21 -

**COUNT III**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Internal Do-Not-Call Class**

130.    Plaintiff incorporates by reference the allegations set forth above.

131.    Section 227(c) of the TCPA requires the FCC to enact regulations to protect residential telephone subscribers' privacy rights. The TCPA provides a private right of action for failing to maintain and/or provide internal do-not-call policies. 47 U.S.C. § 227(c)(5).

132.    Through those powers delegated by Congress, the FCC promulgated regulations including CFR 64.1200 which provides in relevant part:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1)    Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, upon demand, for maintaining a do-not-call list.

> (2)    Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3)    Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber s name, if provided, and telephone number on the do-not-call list at the time the request is made [and] must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .

> (6)    Maintenance of do-not-call lists. A person or entity making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d).

133.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

134.    Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(3) by making telemarketing calls while they failed to honor consumer requests not to receive calls from or on behalf of Defendants, and/or did not record such requests. Even after Plaintiff clearly expressed his desire not to receive any more telephone calls from Defendants, Defendants made two or more calls to Plaintiff, in order to make further solicitations, as described above. Defendants continue to make telemarketing calls while they fail to honor consumer requests not to receive calls from or on behalf of Defendants.

135.    Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(1) by making telemarketing calls while they did not have a written policy for maintaining a do-not-call list, and/or such policy was not available upon demand. Defendants continue to make telemarketing calls when they either do not have a written policy for maintaining a do-not-call list, or do not provide it on demand.

136.    On information and belief, and in addition or in the alternative, Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(2) by making telemarketing calls while they had failed to train their personnel in the existence and use of their do-not-call list. Plaintiff alleges various violations of 47 C.F.R. § 64.1200(d) above. To the extent Defendants claim they instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d), but that their personnel made a mistake implementing their do-not-call list, Defendants failed to adequately train their personnel.

Plaintiff's Class Action Complaint
- 23 -

137. Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(4) by making telephone calls for telemarketing purposes which concealed the name of the individual caller, Defendants' names, and a telephone number at which Defendants could be contacted. Specifically, Defendants' spoofed the outgoing telephone numbers used to call IDNC Class members, and/or their telemarketers fail to identify Defendants until after the telemarketer assesses the call recipients' interest in Defendants' solicitations.

138. Defendants violated 47 C.F.R. § 64.1200(d) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other IDNC Class members while failing to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d).

139. Defendants violated Plaintiff's rights under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d) through the aforementioned acts and omissions.

140. Defendants' violations were knowing and willful because they knew they had failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above.

141. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

142. Plaintiff and Internal Do-Not-Call Class members are entitled to damages of $500.00 per violation for each call placed and text sent by Defendants and up to $1,500.00 per violation if the Court finds Defendants willfully violated the TCPA.

143. Plaintiff, on behalf of himself, and on behalf of the other Internal Do-Not-Call Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants to stop their violations of the TCPA.

144.     Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff and the Internal Do-Not-Call Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

## **Prayer for Judgment**

WHEREFORE, Plaintiff, individually, and or behalf of all other similarly situated, requests the Court grant the following relief:

    a.  Enter an order against Defendants pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative;

    b.  Enter an order appointing Plaintiff's counsel as class counsel;

    c.  Enter judgment in favor of Plaintiff and the putative Classes for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(c) and up to $1,500 per violation of each subsection if Defendants willfully violated the TCPA;

    d.  Enter a judgment in favor of Plaintiff and the putative Classes that enjoins Defendants from violating the TCPA's regulations prohibiting Defendants from calling numbers registered on the National Do Not Call Registry;

    e.  Award Plaintiff and the Classes all expenses of this action, and requiring Defendants to pay the costs and expenses of class notice and administration;

    f.  Award Plaintiff and the Classes all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees; and,

    g.  Award Plaintiff and the Classes such further and other relief the Court deems just and appropriate.

//

Plaintiff's Class Action Complaint

- 25 -

## **Demand for Jury Trial**

PLEASE TAKE NOTICE that Plaintiff, BRADY BENNETT, demands a jury trial in this case.

Respectfully submitted,

Dated: March 4, 2025

*/s/ Mitchel Erik Luxemburg*
Mitchel Erik Luxemburg
The Law Firm of Mitch Luxemburg LLC
23875 Commerce Park Rd,
Beachwood, OH 44122
216-452-9301
Fax: 866-551-7791
Email: mitch@mluxlaw.com
*ATTORNEY TO BE NOTICED*

Alex D. Kruzyk (to seek admission *phv*)
Bryan A. Giribaldo (to seek admission *phv*)
Texas Bar No. 24124547
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
Fax: (877) 453-8003
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com

Jacob U. Ginsburg (to seek admission *phv)*)
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Phone: (267) 468-5374
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

*Counsel for Plaintiff and the proposed classes*