# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

**BRADY BENNETT**, individually and on
behalf of all others similarly situated,

                Plaintiff,

v.

**SYMMETRY FINANCIAL GROUP, LLC**,
and **QUILITY SOFTWARE
APPLICATIONS LLC**,

                Defendants.

_____/

Case No. 1:25-CV-00067

JUDGE MARTIN REIDINGER

MAGISTRATE JUDGE
W. CARLETON METCALF

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT

Defendants Symmetry Financial Group, LLC and Quility Software Applications LLC submit their answer and affirmative defenses to Plaintiff Brady Bennett's Class Action Complaint (ECF No. 1).

## INTRODUCTION[1]

1.    Plaintiff brings this class action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") resulting from the unlawful actions of Defendants.

**RESPONSE:** Defendants admit only that Plaintiff filed a Complaint on behalf of himself and the putative class. Defendants deny the remaining allegations in Paragraph 1, deny any wrongdoing, deny that a class can be certified and that this case is appropriate for class treatment,

---

[1] For convenience, Defendants have incorporated the headings that appear in the Complaint, as well as the formatting from these headings. But Defendants do not necessarily agree with and do not admit the characterization of such headings unless specifically admitted herein; nor do Defendants waive any right to object to those characterizations.

and deny that Plaintiff is entitled to any relief or has any cause of action against Defendants whatsoever.

2.       In violation of the TCPA and its corresponding regulations, 47 C.F.R. § 64.1200 *et seq.*, Defendants sent (or caused another to send) multiple telemarketing communications, soliciting their or their partners' goods or services, to Plaintiff and the putative class members' residential telephone numbers.

**RESPONSE:** Denied.

3.       Specifically, throughout 2023 Defendants (or an entity on Defendants' behalf) initiated at least seventeen (17) communications to Plaintiff's cellular telephone number absent his prior express written consent, despite that Plaintiff had long-ago registered his telephone number on the National Do-Not-Call Registry (the "DNC Registry"), and repeatedly did so after being told to stop.

**RESPONSE:** Denied.

4.       Therefore, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing call or text message to residential or cellular telephone numbers registered with the DNC Registry" without the prior express invitation or permission required by the TCPA.

**RESPONSE**: Denied.

5.       Additionally, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d) by delivering more than one advertisement or telemarketing call or text message to residential or cellular telephone numbers while failing to maintain a list of persons who request not to receive such calls made by or on behalf of that person (an "Internal DNC List") or honor Plaintiff's do-not-call requests.

**RESPONSE:** Denied.

6.      Additionally, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement or telemarketing message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

**RESPONSE:** Denied.

## BACKGROUND ON THE TCPA

7.      In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

**RESPONSE:** Defendants admit that the allegations of Paragraph 7 purport to refer to the TCPA, which speaks for itself. Except as expressly admitted, Defendants deny any remaining allegations.

8.      A leading sponsor of the TCPA described telemarketing "robocalls" as the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

**RESPONSE:** Defendants admit that the allegations of Paragraph 8 purport to refer to 137 Cong. Rec. 30821 (1991), which speaks for itself. Defendants deny any remaining allegations contained in Paragraph 8 of the Complaint.

9.      The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq.*, affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

**RESPONSE:** Defendants admit that the allegations of Paragraph 9 purport to refer to the

TCPA and an implementing regulation, to which no response is required. Defendants deny any remaining allegations contained in Paragraph 9 of the Complaint.

10.     Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

**RESPONSE:** Defendants admit that the allegations of Paragraph 10 purport to refer to the *In re. Rules and Regulations Implementing the Telephone Consumer Protection Act*, 18 F.C.C. Rcd. 14014, 14039 (2003), to which no response is required. Defendants deny any remaining allegations contained in Paragraph 10 of the Complaint.

11.     47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period o [*sic*], where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

**RESPONSE**: Defendants admit that the allegations of Paragraph 11 purport to refer to the TCPA and an implementing regulation, which speak for themselves. Defendants deny any remaining allegations contained in Paragraph 11 of the Complaint.

12.     Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd.

7961, 7964 (F.C.C. July 10, 2015).

**RESPONSE:** Defendants admit that the allegations of Paragraph 12 purport to refer to the Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015), which speaks for itself. Defendants deny any remaining allegations contained in Paragraph 12 of the Complaint.

13.     In fact, in 2021 alone, there were over ***five million complaints*** from Americans to the FTC about unwanted telemarketing calls.[2]

**RESPONSE:** Defendants admit that the allegations of Paragraph 13 purport to refer to the statistics found on https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-biennial-report-congress-national-do-not-call-registry, which speak for themselves. Defendants deny any remaining allegations contained in Paragraph 13 of the Complaint.

14.     The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. [3]

**RESPONSE:** Defendants admit that the allegations of Paragraph 14 purport to refer to the statistics found on https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803, which speak for themselves. Defendants deny any remaining

---

[2] Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited February 27, 2025).

[3] *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803 (last visited February 27, 2025).

allegations contained in Paragraph 14 of the Complaint.

## THE PARTIES

15.    Plaintiff is a natural person who at all relevant times resided in Cedar Park, Texas 78613.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 15 of the Complaint and therefore deny them.

16.    Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

**RESPONSE:** The allegations in Paragraph 16 consist of legal conclusions, to which no response is required. To the extent a response is required, Defendants admit that Plaintiff is an individual.

17.    Symmetry is a business entity with a principal place of business, head office, or otherwise valid mailing address at 204 Whitson Ave, Suite 2C, Swannanoa, North Carolina 28778.

**RESPONSE:** Defendants admit that they are limited liability companies organized and existing under the laws of the state of Delaware with a principal place of business in Swannanoa, North Carolina.

18.    Symmetry is a person as defined by the TCPA.

**RESPONSE**: The allegations in Paragraph 18 consist of legal conclusions, to which no response is required. To the extent a response is required, Defendants admit that Symmetry is a limited liability company.

19.    Symmetry is a for-profit financial company that sells life insurance and other insurance-related products throughout the United States.

**RESPONSE**: Defendants deny the allegations in Paragraph 19 of the Complaint as stated.

20.    Symmetry's website[4] states:

Symmetry Financial GroupTM and Quility® are brand names used by the Quility family of companies. All insurance offers, solicitations, and recommendations made via this website are being made by Quility's licensed affiliated insurance producers, Symmetry Financial Group, LLC (d/b/a Symmetry Insurance Services in CA and NJ, d/b/a Mortgage Protection Insurance Services in IN) and Brandon Ellison. No offers, solicitations or recommendations are being made via this website in any state where one of those named Quility licensees does not have a license. Please see our License Page for a list of all of Symmetry Financial Group, LLC's (d/b/a Symmetry Insurance Services in CA and NJ, d/b/a Mortgage Protection Insurance Services in IN) and Brandon Ellison's license numbers in each state.

**RESPONSE**: Defendants admit that the allegations of Paragraph 20 refer to a website, which speaks for itself. Defendants deny any remaining allegations.

21.    Symmetry's website further states:[5]

In its current condition, the life insurance industry needs more digital advancements to keep up with the pace of client and agent needs. Symmetry's parent company, Quility, has made fantastic strides in that arena. From digital platforms that allow Symmetry agents to help more clients to digital experiences that allow them to meet those clients in a virtual space, they are helping shape the future of life insurance.
…
A testament to that influence lies in their proprietary digital products. Here we will break down how the digital experience is shaping client expectations and how Quility's digital products are giving Symmetry agents the tools to exceed them.
            …

**RESPONSE**: Defendants admit that the allegations of Paragraph 21 refer to a website, which speaks for itself. Defendants deny any remaining allegations.

22.    Defendant Quility is an insurance lead generator with common ownership as Symmetry.

_____

[4] https://sfglife.com/ (last visited February 27, 2025).

[5] https://sfglife.com/agent-benefits-quility-digital-products/ (last visited February 27, 2025).

**RESPONSE:** Denied.

23.     Quility is a "person" as defined by the TCPA.

**RESPONSE:** The allegations in Paragraph 23 consist of legal conclusions, to which no response is required. To the extent a response is required, Defendants admit that Quility is a limited liability company.

24.     Quility lists its headquarters as 204 Whitson Ave. Swannanoa, North Carolina- the same address as Symmetry.

**RESPONSE:** Defendant Quility admits that it is a limited liability company organized and existing under the laws of the state of Delaware with a principal place of business in Swannanoa, North Carolina.

25.     Quility provides the "leads" for Symmetry agents to direct their telemarketing activities, through its LeadStream platform.[6]

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 25 of the Complaint and therefore deny them.

26.     Quility and Symmetry operated as a joint enterprise at all times relevant hereto.

**RESPONSE:** Denied.

**JURISDICTION AND VENUE**

27.     [*Sic*] §Plaintiff's class-action complaint is predicated on the TCPA- a federal statute, 47 U.S.C. § 227, et seq.  Accordingly, a federal question exists and this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**RESPONSE:** Defendants admit only that Plaintiff purports to invoke federal question jurisdiction through a TCPA claim. Defendants deny any remaining allegations.

---

[6] https://sfglife.com/leads/ (last visited February 27, 2025).

28.     Symmetry and Quility are headquartered in North Carolina at 204 Whitson Avenue Suite 2C Swannanoa, North Carolina 28778.

**RESPONSE:** Admitted.

29.     Accordingly, this Court has personal jurisdiction over this dispute and all partiesthereto [*sic*].

**RESPONSE:** The allegations in Paragraph 29 consist of legal conclusions, to which no response is required. To the extent a response is required, Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 29 of the Complaint and therefore deny them.

30.     Venue is proper before this Court under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) as both of the Defendants are headquartered in this District and a significant portion of the events giving rise to this action occurred in this District.

**RESPONSE:** The allegations in Paragraph 30 consist of legal conclusions, to which no response is required. To the extent a response is required, Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 30 of the Complaint and therefore deny them.

## FACTUAL ALLEGATIONS

31.     At all times relevant hereto, Plaintiff is and was the customary user of a residential cellular telephone, the number for which was (512) XXX-5325 (the "5325 Number").

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 31 of the Complaint and therefore deny them.

32.     The 5325 Number was registered to Plaintiff as an individual and not to a business, and Plaintiff used the subject cell phone number primarily for residential purposes, including

personal communication between family and friends, and other common domestic consumer uses.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32 of the Complaint and therefore deny them.

33.    Plaintiff registered the 5325 Number on the National Do Not Call Registry ("NDNCR") on or around November 20, 2008.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33 of the Complaint and therefore deny them.

34.    Plaintiff registered the 5325 Number on the NDNCR to gain the protections of the NDNCR, including the benefit and attainment of solitude from invasive, unwanted, annoying, and irritating telemarketing calls.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34 of the Complaint and therefore deny them.

35.    Symmetry and Quility are for-profit companies, which sell life insurance policies, among other things.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 35 of the Complaint and therefore deny them.

36.    In order to solicit their life insurance products and services, Defendants engaged in a widescale telemarketing operation, where it [*sic*] placed telemarketing calls to consumers *en masse,* without having first obtained the consumers' prior express written consent.

**RESPONSE:** Denied.

37.    On or around May 16, 2023, Defendants commenced their campaign of calls to Plaintiff, soliciting life insurance and products.

**RESPONSE:** Denied.

38. On May 16, 2023, Plaintiff answered one of these calls soliciting life insurance plans.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38 of the Complaint and therefore deny them.

39. Upon answering and receiving an initial sales pitch, Plaintiff responded that he was not interested in learning more about life insurance policies.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 39 of the Complaint and therefore deny them.

40. Despite Plaintiff expressly requesting the caller stop calling his number, the calls continued.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 40 of the Complaint and therefore deny them.

41. On multiple occasions, Plaintiff answered the phone and told the caller that the calls were unwanted and to stop calling.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 41 of the Complaint and therefore deny them.

42. Even after the very first call, where Plaintiff responded very clearly that "No" he was not interested in their life insurance policies, the calls continued with the same repetitious scripted content. The substance of this scripted content included:

> You and your family are qualified for the state approved new life insurance plan that comes with many benefits that you can use while you are alive to pay your mortgage or rent or anything else. Would you be interested in learning more about affordable life insurance plans?

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 42 of the Complaint and therefore deny them.

43. Tired of the repeated and annoying calls, on June 15, 2023, and for the sole purpose of identifying the entity responsible for the unwanted telemarketing calls, Plaintiff feigned interest and engaged with the caller.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 43 of the Complaint and therefore deny them.

44. The original caller identified himself as "John with Living Benefits," and after Plaintiff feigned interest in the caller's sales pitch, the call was transferred to a "supervisor" who referred to himself as "Chris Adams", who then advised Defendants' agent "Patraese Livingston" could help Plaintiff.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 44 of the Complaint and therefore deny them.

45. Ms. Livingston then sent a text message Plaintiff with a copy of her business card which displayed a direct affiliation with "SFG," which Patrice explained was Symmetry (i.e. Symmetry Financial Group"), and its affiliated company, Quility.[7]

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 45 of the Complaint and therefore deny them.

46. Each of the calls Plaintiff received was substantially similar, featured highly similar scripts, identified the company/companies as "Living Benefits", sold the same lifeinsurance [*sic*] products and used the same language and cadence. Accordingly, upon information and good faith belief, all of these highly similar calls derived from the same source and they all sought to benefit Defendants.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to

---

[7] Defendants omit the screenshot.

the truth or falsity of the allegations in Paragraph 46 of the Complaint and therefore deny them.

47.     Defendants failed to provide the actual name of their company/companies in the course of the call campaign to Plaintiff, despite the TCPA's requirement they do so.  It was only after Plaintiff went "undercover" that he was able to identify the culprits/beneficiaries.

**RESPONSE:** Denied.

48.     The communications from Defendants were "solicitations" as defined by the TCPA, as they were made in furtherance of Defendants' efforts to generate profit by selling life insurance policies.

**RESPONSE:** Denied.

49.     A non-exhaustive list of Defendants' unlawful telemarketing calls to Plaintiff includes:

| No. | Date | Time Received | Calling Number | Identified Calling Party |
|-----|------|--------------|---------------|-------------------------|
| 1 | 5/16/2023 | 2:10 PM CST | 314-756-9810 | John - Living Benefits |
| 2 | 5/16/2023 | 2:45 PM CST | 512-212-4617 | John - Living Benefits |
| 3 | 5/26/2023 | 4:06 PM CST | 714-247-1432 | John Marshall - Living Benefits |
| 4 | 5/31/2023 | 4:26 PM CST | 503-386-5943 | John Adams - Living Benefits |
| 5 | 6/05/2023 | 3:51 PM CST | 302-307-0786 | Living Benefits |
| 6 | 6/05/2023 | 12:07 PM CST | 512-399-2177 | Sam - Living Benefits |
| 7 | 6/05/2023 | 12:56 PM CST | 314-756-1819 | Hazel - Living Benefits |
| 8 | 6/09/2023 | 5:32 PM CST | 217-212-1956 | Paul Adams - Living Benefits |
| 9 | 6/12/2023 | 3:18 PM CST | 320-216-9684 | Chris - Living Benefits |
| 10 | 6/12/2023 | 11:21 AM CST | 213-376-2020 | Paul Adams - Living Benefits |
| 11 | 6/13/2023 | 1:19 PM CST | 512-650-3202 | Living Benefits |
| 12 | 6/15/2023 | 10:12 AM CST | 681-233-2403 | John - Living Benefits |
| 13 | 6/15/2023 | 12:33 PM CST | 512-750-0596 | Living Benefits |

| 14 | 6/15/2023 | 2:57 PM CST | 512-877-8606 | Chris - Living Benefits |
|----|-----------|-------------|--------------|-------------------------|
| 15 | 6/19/2023 | 10:57 AM CST | 201-267-1864 | Living Benefits |
| 16 | 6/19/2023 | 1:36 PM CST | 512-456-8144 | Living Benefits |
| 17 | 6/19/2023 | 2:48 PM CST | 512-729-0321 | Living Benefits |

**RESPONSE:** Denied.

50.     The nature of Symmetry's business involves the sale of goods, and the provision of services, associated with life insurance coverage and other financial or insurance-related products.[8]

**RESPONSE:** Defendants admit that Plaintiff references a website, which speaks for itself. Defendants deny any remaining allegations.

51.     The sale of these goods and services are procured by Symmetry, or on its behalf, through telemarketing and the delivery of solicitation calls.

**RESPONSE:** Denied.

52.     Plaintiff was not seeking or in the market for life insurance.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 52 of the Complaint and therefore deny them.

53.     Plaintiff found the telemarketing communications received to be annoying, irritating, and disruptive.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 53 of the Complaint and therefore deny them.

54.     Upon information and good faith belief, the telephone calls and text messages at issue were sent by Defendants voluntarily.

**RESPONSE:** Denied.

---

[8]     https://sfglife.com/about-us/ (last visited February 27, 2025).

55.    The telephone calls and text messages at issue were sent for non-emergency purposes.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 55 of the Complaint and therefore deny them.

56.    Plaintiff suffered actual harm as a result of the telephone calls and text messages at issue in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 56 of the Complaint and therefore deny them.

57.    Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered his cellular telephone number with the DNC Registry.

**RESPONSE:** Denied.

58.    Upon information and good faith belief, because Defendants failed to heed Plaintiff's "stop" instruction and sent numerous to Plaintiff's cellular telephone number after he repeatedly instructed Defendants to "stop", Defendants either (1) failed to implement or maintain an Internal DNC List whatsoever; (2) failed to maintain an adequate written policy for honoring revocation or Internal DNC List requests; (3) failed to adequately train its employees or personnel regarding its Internal DNC List; or (4) failed to adequately record revocation or Internal DNC List requests.

**RESPONSE:** Denied.

59.    Had Defendants maintained or adhered to an Internal DNC List or external do-not-call list, Defendants would not have placed telephone calls to Plaintiff after his "stop" instruction.

**RESPONSE:** Denied.

60.    Plaintiff did not provide prior express written consent or prior express invitation or

permission to Defendants to deliver the subject solicitation communications to his cellular telephone number.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 60 of the Complaint and therefore deny them.

61. Plaintiff did not have any existing or established business relationship with Defendants prior to receiving the subject solicitation communications.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 61 of the Complaint and therefore deny them.

62. Defendants did not provide a clear and conspicuous disclosure to Plaintiff that Symmetry or Quility would be making telemarketing calls to his cellular telephone number.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 62 of the Complaint and therefore deny them.

63. Moreover, based on the pervasive nature of Defendants' obfuscation of their identities, Defendants acted willfully and intentionally through their violations of the TCPA.

**RESPONSE:** Denied.

64. As a result of the foregoing, Plaintiff suffered actual harm as a result of the telephone calls and text messages at issue in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

**RESPONSE:** Denied.

65. Plaintiff suffered additional harm due to his frustration and difficulty in identifying the entity or entities and persons responsible for the unwanted solicitation calls to his cellular telephone number.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to

the truth or falsity of the allegations in Paragraph 65 of the Complaint and therefore deny them.

## DIRECT AND VICARIOUS LIABILITY

66.     The foregoing acts or omissions were in violation of the TCPA.

**RESPONSE:** Denied.

67.     Without having had the benefit of discovery to show otherwise, Plaintiff alleges Defendants are directly liable for the calls at issue, or in the alternative, the calls were placed on their behalf by third-party/parties.

**RESPONSE:** Denied.

68.     Symmetry expressly acknowledges that Quility provides the leads for its insurance agents to then sell insurance products to, stating under a heading titled "Focus on selling, not prospecting":[9]

> Symmetry agents have access to Quility LeadStream, the industry's best resource for qualified, interested and compliant leads. Backed by data science, proprietary acquisition strategies, and the experience of generating millions of leads, our agents focus on selling instead of prospecting. This is why Symmetry Financial Group is one of the largest and fastest-growing IMOs in the country for over a decade.

**RESPONSE**: Defendants admit that Plaintiff references a website, which speaks for itself. Defendants deny any remaining allegations.

69.     Moreover, Symmetry is a "brand name[] used by the Quility family of companies."

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 69 of the Complaint and therefore deny them.

70.     Thus, either Symmetry sent the violative communications, or Quility did as part of its "prospecting" service for Symmetry agents.

**RESPONSE:** Denied.

---

[9] https://sfglife.com/leads/ (last visited February 28, 2025).

71.    Alternatively, if some or all of the communications were made by third-parties on behalf of Defendants, then Defendants would be vicariously liable for those communications.

**RESPONSE:** Denied.

72.    The TCPA statute expressly permits liability for violative calls made "by or on behalf of the same entity". 47 U.S.C. § 227(c)(5).

**RESPONSE:** Defendants admit that the allegations of Paragraph 72 purport to refer to the TCPA and an implementing regulation, to which no response is required. Defendants deny any remaining allegations contained in Paragraph 72 of the Complaint.

73.    On May 9, 2013, the FCC determined that contracting with other entities to perform the telemarketing activities was not a basis for avoiding liability, as written within a Declaratory Ruling, which held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

**RESPONSE:** Defendants admit that the allegations of Paragraph 73 purport to refer to the TCPA and declaratory ruling, to which no response is required. Defendants deny any remaining allegations contained in Paragraph 73 of the Complaint.

74.    Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, and

rejected the assertion that a seller's liability requires a finding of formal actual agency or immediate direction and control over third parties who place a telemarketing call. *Id.*, at 6587 n. 107.

**RESPONSE:** Defendants admit that the allegations of Paragraph 74 purport to refer to the TCPA and a regulation, to which no response is required. Defendants deny any remaining allegations contained in Paragraph 73 of the Complaint.

75.     The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

**RESPONSE:** Defendants admit that the allegations of Paragraph 75 purport to refer to the TCPA and a regulation, to which no response is required. Defendants deny any remaining allegations contained in Paragraph 75 of the Complaint.

76.     Plaintiff "sensibly assumed" or inferred the telemarketing communications received were from or on behalf of Defendants because one of the calls was transferred to a licensed Texas insurance broker, who provided a copy of her business card that showed an explicit affiliation with "SFG", which the broker explained was "Symmetry Financial Group."

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 76 of the Complaint and therefore deny them.

77.     Further, Plaintiff stated in that call "I've never heard of them," prompting the broker to ask if Plaintiff has heard of "Quility."

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 77 of the Complaint and therefore deny them.

78.     Defendants may have hired, encouraged, permitted, or enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiff and only known to Defendants.

**RESPONSE:** Denied.

79.     Defendants' third-party telemarketers, if any, had actual and/or apparent authority to act on Defendants' behalf.

**RESPONSE:** Denied.

80.     Defendants ratified the violations of the TCPA by its agents by accepting leads and deriving profit from sales arising out of unlawful telemarketing operations.

**RESPONSE:** Denied.

81.     Defendants acted as principals to their telemarketing agents, whose identity or identities are unknown at this time.

**RESPONSE:** Denied.

82.     Defendants are not permitted under the law to outsource or contract its way out of liability by directing and benefitting from its agents' TCPA violations.

**RESPONSE:** Denied.

83.     For the counts identified below, to the extent Defendants initiated one or more unlawful communications directly, then Defendants are directly liable for each violative call.

**RESPONSE:** Denied.

84.     Alternatively, for the counts identified below, to the extent any call was made by a third-party agent or entity acting on Defendants' behalf, then Defendants are vicariously liable for encouraging or benefitting from the violative conduct of such an agent or entity.

**RESPONSE:** Denied.

# CLASS ALLEGATIONS

85.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated and as a representative of the following classes (the "Classes"):

**Federal Do-Not-Call Registry Class:**

> All persons throughout the United States (1) to whom Symmetry Financial Group, LLC or Quility Software Applications LLC placed, or caused to be placed, more than one telephone call within a 12-month period, promoting Symmetry Financial Group, LLC's or Quility Software Applications LLC's, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Symmetry Financial Group, LLC or Quility Software Applications LLC delivered, or caused to be delivered, at least two of the telephone calls within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Internal Do-Not-Call List Class:**

> All persons throughout the United States (1) to whom Symmetry Financial Group, LLC or Quility Software Applications LLC placed, or caused to be placed, more than one telephone call within a 12-month period, promoting Symmetry Financial Group, LLC's or Quility Software Applications LLC's, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Symmetry Financial Group, LLC or Quility Software Applications LLC delivered, or caused to be delivered, at least two of the telephone calls within the 12-month period, (3) who previously instructed Symmetry Financial Group, LLC or Quility Software Applications LLC not to call them or deliver text messages to them, (4) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

> All persons and entities throughout the United States (1) to whom Symmetry Financial Group, LLC or Quility Software Applications LLC placed, or caused to be placed, more than one telephone call within a 12-month period, promoting Symmetry Financial Group, LLC's or Quility Software Applications LLC's, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Symmetry Financial Group, LLC or Quility Software Applications LLC delivered, or caused to be delivered, at least two of the

telephone calls within the 12-month period, (2) where the subject caller did not state the name of the individual caller, the name of Symmetry Financial Group, LLC or Quility Software Applications LLC, and a telephone number or address at which Symmetry Financial Group, LLC or Quility Software Applications LLC may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

**RESPONSE:** Defendants admit that Plaintiff purports to have filed this action on behalf of himself and all others he claims are similarly situated as alleged members of one or more of the classes described in Paragraph 85. Defendants deny that this action satisfied the requirements to be maintained as a class action. Defendants deny any remaining allegations of Paragraph 85.

86.     Excluded from the Classes are Defendants, their officers, directors, managers, and members, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

**RESPONSE:** Defendants admit that Plaintiff purports to exclude the listed individuals and entities from the putative classes. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 86 of the Complaint and further deny that class certification is appropriate.

87.     Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

**RESPONSE:** Denied.

88.     The exact number of members of the Classes are [*sic*] unknown to Plaintiff at this time and can be determined only through appropriate discovery.

**RESPONSE:** Denied.

89.     The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

**RESPONSE:** Denied.

90.     In addition, the members of the Classes are identifiable in that, upon information

and belief, their cellular telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties.

**RESPONSE:** Denied.

91.    Plaintiff's claims are typical of the claims of the members of the Classes.

**RESPONSE:** Denied.

92.    As it did for all members of the Federal Do-Not-Call Registry Class, Defendants placed telephone calls to Plaintiff's telephone number more than thirty days after Plaintiff registered his cellular telephone number with the DNC Registry without obtaining prior express written consent.

**RESPONSE:** Denied.

93.    As it did for all members of the Internal Do-Not-Call List Class, Defendants placed telephone calls to Plaintiff's telephone number without previously consulting or cross-referencing its own internal do-not-call list(s), or, in the alternative, Defendants did not maintain such a list.

**RESPONSE:** Denied.

94.    As it did for all members of the Sender Identification Class, Defendants delivered placed telephone calls to Plaintiff's telephone number where the subject telephone calls did not state the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted.

**RESPONSE:** Denied.

95.    Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

**RESPONSE:** Denied.

96.    Plaintiff's claims are based on the same theories as are the claims of the members

of the Classes.

**RESPONSE:** Denied.

97.     Plaintiff suffered the same injuries as the members of the Classes.

**RESPONSE:** Denied.

98.     Plaintiff will fairly and adequately protect the interests of the members of the Classes.

**RESPONSE:** Denied.

99.     Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

**RESPONSE:** Denied.

100.    Plaintiff will vigorously pursue the claims of the members of the Classes.

**RESPONSE:** Denied.

101.    Plaintiff has retained counsel experienced and competent in class action litigation.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 101 of the Complaint and therefore deny them.

102.    Plaintiff's counsel will vigorously pursue this matter.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 102 of the Complaint and therefore deny them.

103.    Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

**RESPONSE:** Defendants lack information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 103 of the Complaint and therefore deny them.

104.    The questions of law and fact common to the members of the Classes predominate

over questions that may affect individual members of the Classes.

**RESPONSE:** Denied.

105.    Issues of law and fact common to all members of the Classes are:

    a.    Defendants' conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

    b.    For the Federal Do-Not-Call Registry Class, Defendants' practice of placing telephone calls, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

    c.    For the Internal Do-Not-Call List Class, Defendants' practice of placing telephone calls, for solicitation purposes, without consulting or cross-referencing against any internal do-not-call lists, including whether Defendants maintained any such lists;

    d.    For the Sender Identification Class, Defendants' practice of placing telephone calls, for solicitation purposes, without identifying the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted;

    e.    Defendants' violations of the TCPA; and

    f.    The availability of statutory penalties.

**RESPONSE:** Denied, including all subparagraphs.

106.    A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

**RESPONSE:** Denied.

107.    If brought and prosecuted individually, the claims of the members of the Classes

would require proof of the same material and substantive facts.

**RESPONSE:** Denied.

108. The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

**RESPONSE:** Denied.

109. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

**RESPONSE:** Denied.

110. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

**RESPONSE:** Denied.

111. The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

**RESPONSE:** Denied.

112. The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

**RESPONSE:** Denied.

113. There will be no extraordinary difficulty in the management of this action as a class action.

**RESPONSE:** Denied.

114.     Defendants acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

**RESPONSE:** Denied.

### COUNT I
### Violation of 47 U.S.C. § 227(c)(5)
### On behalf of the Federal Do-Not-Call Registry Class

115.     Plaintiff incorporates by reference the allegations set forth above.

**RESPONSE:** Defendants repeat and re-allege their responses to Paragraphs 1 through 114 as if fully stated herein.

116.     The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

**RESPONSE:** Defendants admit that the allegations of Paragraph 116 purport to refer to the TCPA and an implementing regulation, which speak for themselves. Defendants deny any remaining allegations contained in Paragraph 116 of the Complaint.

117.     Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

**RESPONSE:** Defendants admit that the allegations of Paragraph 117 purport to refer to the TCPA and an implementing regulation, which speak for themselves. Defendants deny any remaining allegations contained in Paragraph 117 of the Complaint.

118.     The penalty for each call made in violation of the TCPA's restrictions on placing

telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

**RESPONSE:** Defendants admit that the allegations of Paragraph 118 purport to refer to the TCPA and an implementing regulation, which speak for themselves. Defendants deny any remaining allegations contained in Paragraph 118 of the Complaint.

119.    In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5)(A).

**RESPONSE:** Denied.

120.    By calling Plaintiff and the putative class members after their numbers were registered on the National Do Not Call Registry, Defendants violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

**RESPONSE:** Denied.

121.    Defendants knew or should have known that Plaintiff and the putative class members had their numbers registered on the Do Not Call Registry.

**RESPONSE:** Denied.

122.    Plaintiff and the putative class members are entitled to damages of $500.00 per violation for each call placed by Defendants and up to $1,500.00 per violation if the Court finds Defendants willfully violated the TCPA.

**RESPONSE:** Denied.

**COUNT II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Sender Identification Class**

123.   Plaintiff incorporates by reference the allegations set forth above.

**RESPONSE:** Defendants repeat and re-allege their responses to Paragraphs 1 through 123 as if fully stated herein.

124.   The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

**RESPONSE:**  Defendant admits that the allegations of Paragraph 124 purport to refer to the TCPA and an implementing regulation, which speak for themselves. Defendants deny any remaining allegations contained in Paragraph 124 of the Complaint.

125.   Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

**RESPONSE:** Defendants admit that the allegations of Paragraph 125 purport to refer to the TCPA and an implementing regulation, which speak for themselves. Defendants deny any remaining allegations contained in Paragraph 125 of the Complaint.

126.   Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone

solicitations to which they object. 47 U.S.C. § 227(c).

**RESPONSE:** Defendants admit that the allegations of Paragraph 126 purport to refer to the TCPA, which speaks for itself. Defendants deny any remaining allegations contained in Paragraph 126 of the Complaint.

127.   Defendants violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

**RESPONSE:** Denied.

128.   Defendants therefore violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Sender Identification Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4).

**RESPONSE:** Denied.

129.   As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4), Plaintiff, and the members of the Sender Identification Class, are entitled to damages in an amount to be proven at trial.

**RESPONSE:** Denied.

**COUNT III**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Internal Do-Not-Call Class**

130.   Plaintiff incorporates by reference the allegations set forth above.

**RESPONSE:** Defendants repeat and re-allege their responses to Paragraphs 1 through 129 as if fully stated herein.

131.     Section 227(c) of the TCPA requires the FCC to enact regulations to protect residential telephone subscribers' privacy rights. The TCPA provides a private right of action for failing to maintain and/or provide internal do-not-call policies. 47 U.S.C. § 227(c)(5).

**RESPONSE:**  Defendants admit that the allegations of Paragraph 131 purport to refer to the TCPA, which speaks for itself, to which no response is required. Defendants deny any remaining allegations contained in Paragraph 131 of the Complaint.

132.     Through those powers delegated by Congress, the FCC promulgated regulations including CFR 64.1200 which provides in relevant part:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1)     Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, upon demand, for maintaining a do-not-call list.
>
> (2)     Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3)     Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber s name, if provided, and telephone number on the do-not-call list at the time the request is made [and] must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .
>
> (6)     Maintenance of do-not-call lists. A person or entity making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d).

**RESPONSE:** Defendants admit that the allegations of Paragraph 132 purport to refer to the TCPA and an implementing regulation, which speak for themselves. Defendants deny any remaining allegations contained in Paragraph 132 of the Complaint.

133.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

**RESPONSE:** Defendants admit that the allegations of Paragraph 133 purport to refer to the TCPA and an implementing regulation, which speak for themselves. Defendants deny any remaining allegations contained in Paragraph 133 of the Complaint.

134.    Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(3) by making telemarketing calls while they failed to honor consumer requests not to receive calls from or on behalf of Defendants, and/or did not record such requests. Even after Plaintiff clearly expressed his desire not to receive any more telephone calls from Defendants, Defendants made two or more calls to Plaintiff, in order to make further solicitations, as described above. Defendants continue to make telemarketing calls while they fail to honor consumer requests not to receive calls from or on behalf of Defendants.

**RESPONSE:** Denied.

135.    Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(1) by making telemarketing calls while they did not have a written policy for maintaining a do-not-call list, and/or such policy was not available upon demand. Defendants continue to make telemarketing calls when they either do not have a written policy for maintaining a do-not-call list, or do not provide it on demand.

**RESPONSE:** Denied.

136.     On information and belief, and in addition or in the alternative, Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(2) by making telemarketing calls while they had failed to train their personnel in the existence and use of their do-not-call list. Plaintiff alleges various violations of 47 C.F.R. § 64.1200(d) above. To the extent Defendants claim they instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d), but that their personnel made a mistake implementing their do-not-call list, Defendants failed to adequately train their personnel.

**RESPONSE:** Denied.

137.     Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(4) by making telephone calls for telemarketing purposes which concealed the name of the individual caller, Defendants' names, and a telephone number at which Defendants could be contacted. Specifically, Defendants' spoofed the outgoing telephone numbers used to call IDNC Class members, and/or their telemarketers fail to identify Defendants until after the telemarketer assesses the call recipients' interest in Defendants' solicitations.

**RESPONSE:** Denied.

138.     Defendants violated 47 C.F.R. § 64.1200(d) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other IDNC Class members while failing to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d).

**RESPONSE:** Denied.

139.     Defendants violated Plaintiff's rights under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d) through the aforementioned acts and omissions.

**RESPONSE:** Denied.

140. Defendants' violations were knowing and willful because they knew they had failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above.

**RESPONSE:** Denied.

141. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

**RESPONSE:** Denied.

142. Plaintiff and Internal Do-Not-Call Class members are entitled to damages of $500.00 per violation for each call placed and text sent by Defendants and up to $1,500.00 per violation if the Court finds Defendants willfully violated the TCPA.

**RESPONSE:** Denied.

143. Plaintiff, on behalf of himself, and on behalf of the other Internal Do-Not-Call Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants to stop their violations of the TCPA.

**RESPONSE:** Denied.

144. Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff and the Internal Do-Not-Call Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

**RESPONSE:** Denied, including because the allegations appear to invoke an inapplicable California Civil Code.

## Prayer for Judgment

WHEREFORE, Plaintiff, individually, and or [*sic*], behalf of all other similarly situated, requests the Court grant the following relief:

    a.    Enter an order against Defendants pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative;

    b.    Enter an order appointing Plaintiff's counsel as class counsel;

    c.    Enter judgment in favor of Plaintiff and the putative Classes for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(c) and up to $1,500 per violation of each subsection if Defendants willfully violated the TCPA;

    d.    Enter a judgment in favor of Plaintiff and the putative Classes that enjoins Defendants from violating the TCPA's regulations prohibiting Defendants from calling numbers registered on the National Do Not Call Registry;

    e.    Award Plaintiff and the Classes all expenses of this action, and requiring Defendants to pay the costs and expenses of class notice and administration;

    f.    Award Plaintiff and the Classes all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees; and,

    g.    Award Plaintiff and the Classes such further and other relief the Court deems just and appropriate.

**RESPONSE:** Defendants admit only that Plaintiff seeks the relief requested in the unnumbered "WHEREFORE" section, including each and every allegation in subparagraphs A through G. Defendants, however, deny that Plaintiff is entitled to any such relief, including class certification, appointment as class representatives or counsel, damages, equitable relief, injunctive relief, fees, costs, or any relief whatsoever.

## Demand for Jury Trial

PLEASE TAKE NOTICE that Plaintiff, BRADY BENNETT, demands a jury trial in this case

**RESPONSE**: Defendants deny that any of the allegations set forth in the Complaint allege triable issues against Defendants.

## GENERAL DENIAL

Defendants deny any and all allegations set forth in the Complaint that are not specifically admitted herein.

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Cause of Action)

The Complaint fails to allege facts sufficient to state a cause of action against Defendants. For example, Plaintiff fails to allege sufficient facts to show that Defendants made any "telephone solicitations" or "telemarketing" calls within the meaning of the TCPA.

### SECOND AFFIRMATIVE DEFENSE
### (Acquiescence, Estoppel, Waiver, Fraud, Conspiracy, Latches and Unclean Hands)

Plaintiff and/or the putative class members are barred from asserting their claims, in whole or in part, by the doctrines of acquiescence, estoppel, waiver, latches, and/or unclean hands. For example, Plaintiff and/or the putative class members cannot assert claims under the TCPA or similar statutes if he acted in bad faith, for example, by providing the subject number referenced in the Complaint.

### THIRD AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

To the extent that the Complaint alleges that Plaintiff and the putative class members suffered any purported injury or damages, they failed to take any and all reasonable or necessary actions to avoid or reduce their damages, and any damages awarded to them must be reduced accordingly.

### FOURTH AFFIRMATIVE DEFENSE
### (No Knowing or Willful Misconduct)

Any claim for treble damages is barred because Defendants did not engage in knowing or willful misconduct.

## FIFTH AFFIRMATIVE DEFENSE
### (No Proximate Cause)

Defendants did not proximately cause any damages, injury, or violation alleged in the Complaint. Instead, the acts of third parties (such as vendors, Plaintiff, or other persons who provided the number on which Plaintiff was allegedly called) proximately caused the damages, injuries, or violations at issue, to the extent they occurred.

## SIXTH AFFIRMATIVE DEFENSE
### (Standing)

Plaintiff and the putative class members lack standing to bring the claims alleged in the Complaint because any harm allegedly caused by the calls at issue (which Defendants deny) is not fairly traceable to any violation allegedly committed by Defendants, and because Plaintiff has not suffered any Article III harm under *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015) and *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) (particularly with that respect to the putative classes he seeks to represent).

## SEVENTH AFFIRMATIVE DEFENSE
### (Fault of Third Parties)

To the extent that the Complaint states a claim, third parties or Plaintiff and/or the putative class members themselves caused or were responsible for the alleged harm.

## EIGHTH AFFIRMATIVE DEFENSE
### (No Agency or Vicarious Liability and Proportional Allocation of Fault)

Any damages, injury, violation, or wrongdoing alleged in the Complaint was caused by third parties or Plaintiff and/or putative class members for which Defendants cannot be held vicariously liable. Further, Defendants did not authorize, ratify, encourage, participate in, aid, abet, or assist in any of the conduct of which the Complaint complains and cannot be held liable for it. For example, to the extent vendors caused any damages, injury, violations of the law or

wrongdoing or engaged in the conduct of which the Complaint complains, vendors acted outside the scope of the parties' agreement and Defendants did not approve of that conduct. As such, Defendants cannot be held vicariously liable and its liability, if any, must be eliminated or reduced by an amount proportionate to the fault attributable to third parties or Plaintiff.

## NINTH AFFIRMATIVE DEFENSE
### (First Amendment)

The TCPA and the regulations and rules, interpretations, and other rulings promulgated thereunder violate the First Amendment of the United States Constitution. For example, they impose content-based restrictions on speech that fail to withstand strict scrutiny.

## TENTH AFFIRMATIVE DEFENSE
### (Due Process)

The application of the TCPA upon which the Complaint is based, including the imposition of statutory damages on Defendants, would violate the Due Process provisions of the United States Constitution. For example, certain definitions contained in the TCPA render the statute unconstitutionally vague. Additionally, the statutory penalties sought by Plaintiff are excessive.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Hobbs Act/FCC Exceeded Authority)

The Hobbs Act cannot be validly or constitutionally applied to preclude Defendants from raising defenses to an action arising under the TCPA or rules or regulations promulgated thereunder. Along the same lines, Plaintiff's and/or putative class members' TCPA claims are barred to the extent they are based on regulations or rulings that exceed the FCC's delegated authority.

## TWELFTH AFFIRMATIVE DEFENSE
### (Substantial Compliance with Laws)

Defendants are not liable because they acted reasonably and with due care and substantially

complied with all applicable statutes, regulations, ordinances, and/or other laws.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Compliance with 47 C.F.R. § 64.1200(c)(2)(i))

Any and all claims brought in the Complaint are barred in whole or in part because any violation of the TCPA occurred as a result of error, and, as part of its routine business practice, Defendants meet the standards set forth in 47 C.F.R. § 64.1200(c)(2)(i).

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Established Business Relationship)

Any and all claims brought in the Complaint are barred to the extent Plaintiff and/or putative class members had business relationships with the sender.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Not a Residential Number)

Plaintiff's claims are barred to the extent his number(s) or putative class members' numbers are not residential.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (No Charge)

Plaintiff and the putative class members were not "charged for the call" with respect to the calls at issue, as that term is used in the TCPA.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Good Faith)

Any and all claims brought in the Complaint are barred because Defendants possessed a good faith belief that they had consent to contact the number at issue. Defendants acted in good faith in any and all interactions with Plaintiff and did not directly or indirectly perform any acts whatsoever which would constitute a violation of any rights of Plaintiff or any duty, if any, owed to Plaintiff.

**EIGHTEENTH AFFIRMATIVE DEFENSE**
**(Reasonable Practices)**

Any and all claims brought in the Complaint are barred in whole or in part because Defendants have established and implemented reasonable practices and procedures to prevent violations of the TCPA and related regulations.

**NINETEENTH AFFIRMATIVE DEFENSE**
**(*Bona Fide* Error)**

Any and all claims brought in the Complaint are barred because Defendants possessed a good faith belief that it was not committing any wrongdoing and any violations resulted from a *bona fide* error, despite reasonable practices to prevent violations of the TCPA and related regulations.

**TWENTIETH AFFIRMATIVE DEFENSE**
**(One Call)**

Any and all claims brought in the Complaint are barred in whole or in part to the extent Plaintiff or any putative class member did not receive more than one telephone call within any 12-month period by or on behalf of Defendants.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**
**(Failure to Join Party or Name Proper Defendant)**

The claims brought in the Complaint are barred, in whole or in part, by Plaintiff's failure to join necessary or indispensable parties. Plaintiff's claims are also barred, in whole or in part, to the extent Plaintiff failed to name the proper Defendants, over which the Court may lack personal jurisdiction.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**
**(No Immediate Threat of Future Injury)**

Plaintiff's request for injunctive relief is barred with respect to any alleged claims because the alleged violations are not likely to recur.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (Adequate Remedy at Law)

Any and all claims for equitable relief are barred, in whole or in part, because Plaintiff and/or putative class members have an adequate remedy at law.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (Damages Limitation)

Plaintiff and the putative class members are barred from asserting their claims to the extent that limitations on exclusive remedies and damages set forth in applicable terms and conditions.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (Excessive Fines)

Any and all claims are barred, in whole or in part, because the TCPA violates the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (Class Action Deficiencies)

Plaintiff cannot satisfy the prerequisites set forth in Rule 23 of the Federal Rules of Civil Procedure to maintain this action as a class action. Further, Defendants hereby give notice that in the event that this Court certifies a class, which Defendants deny would be appropriate, it reserves the right to adopt and incorporate by reference each and every applicable defense pleaded (and any others that may be appropriate at that point) to all members of such class.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE
### (Reservation of Right to Assert Further Defenses)

Defendants have not knowingly or intentionally waived any applicable defenses, and hereby give notice that they intend to rely on such other and further affirmative defenses as may become available during discovery in this action. Defendants reserve the right to amend their Answer to assert any such defense.

## Prayer for Relief

**WHEREFORE**, Defendants pray for judgment as follows:

1.      That Plaintiff take nothing from Defendants by reason of this Complaint and that judgment be entered in favor of Defendants;

2.      For dismissal of the Complaint with prejudice;

3.      For denial of class certification;

4.      That the Court award costs and reasonable attorneys' fees;

5.      For such other relief as the Court deems just and proper.

Dated: June 6, 2025.

Respectfully submitted,

**CRANFILL SUMNER**

*/s/ Elizabeth King*
Elizabeth King
N.C. State Bar No. 30376
T: (910) 777-6010
eking@cshlaw.com
5535 Currituck Drive, Suite 210
Wilmington, NC 28403

and

*/s/ Ashley Futrell Hinkson*
**WATSTEIN TEREPKA, LLC**
Ashley Futrell Hinkson
T: 404-905-9830
E: ahinkson@wtlaw.com
Matthew A. Keilson
T: 305-498-3216
E: mkeilson@wtlaw.com
75 14th Street, NE, Suite 2600
Atlanta, Georgia 30309

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2025, I caused to be filed a true and correct copy of the foregoing document using the Court's CM/ECF system, which will send a notice of electronic filing to all parties of record.

/s/ Ashley Futrell Hinkson
Ashley Futrell Hinkson