# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA

**BRADY BENNETT**, *individually and on behalf of all others similarly situated,*

    Plaintiff,

    v.

**SYMMETRY FINANCIAL GROUP, LLC, and QUILITY SOFTWARE APPLICATIONS LLC,**

    Defendants.

Case No.: 1:25-cv-00067-MR-WCM

# PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF HIS MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Through Defendants' opposition to Brady Bennett ("Plaintiff" or "Bennett")'s motion for leave to file his First Amended Class-Action Complaint, Symmetry Financial Group, LLC and Quility Software Applications, LLC ("Defendants") lodge unbecoming personal attacks, improperly highlight pre-litigation settlement negotiations, and make various misrepresentations to the Court on matters of fact and law alike. Critically, while Defendants accuse Plaintiff of "bad faith" and being "dilatory," Plaintiff's counsel learned after filing the motion to amend that Defendants were working in tandem with Level Up Consulting Agency, LLC ("Level Up") through a joint-defense agreement. Because of that agreement, Defendants and Level Up have obstructed discovery for the purpose of running out the clock in order to shield themselves from scrutiny regarding their unlawful telemarketing scheme. While Defendants' opposition brief was rife with impropriety, it offers the Court no reason to deny Plaintiff's motion for leave to amend.

### A. Defendants Have Now Confirmed They Have a Joint-Defense Agreement With Level Up, Highlighting Why Amendment is Necessary.

As set forth in Plaintiff's motion and supporting papers, Defendants and Level Up have created a perpetual cycle of obstruction in resisting Bennett's efforts to obtain call records necessary to identify the size and scope of the putative class and to eventually send notice to members. ECF No. 30-1 at 4-5. Defendants claim call records would only be in Level Up's possession, and Level Up seeks to quash the

1

subpoenas, claiming they are too "burdensome" to impose on a non-party. *Id*. Resultingly, Level Up's motion to quash is pending in the District of South Carolina, where Bennett's imminent motion to compel and possible motions for *in camera* review[1] and motion for forensic audit[2] (all of which Defendants' counsel insists require more conferral) will be litigated in this District. After substantial correspondence and conferral, Defendants' counsel finally conceded on November 18, 2025 that Level Up and Defendants are working together and have a joint defense agreement as it relates to this action and the subpoenas issued to Level Up in South Carolina. Ginsburg Decl. ¶ 13.

The joint defense strategy between the parties involved is revealing itself: Defendants and Level Up both point the finger at the "empty chair" in the other court, try to run out the clock on the class certification deadline, and then accuse Bennett and his counsel of delay, lacking diligence and (ironically) of "bad faith." There are now two courts to adjudicate the same arguments by telemarketing entities resisting discovery in tandem, creating judicial inefficiency and the risk of inconsistent rulings on the same discovery issues. If the District of South Carolina

---

[1] The Defendants and Level Up are claiming "common interest privilege" to abstain from producing relevant communications.

[2] Defendants and Level Up both claim not to have call records, despite legal obligations to retain those records (16 CFR 310.5) and the practical likelihood that those records exist in some form, setting the stage for a third-party forensic audit.

2

concludes certain items are discoverable, and this Court concludes otherwise (or vice versa), discovery would be thrown into chaos. As this Court noted in a diversity action several years ago, "allowing Plaintiff's claims to proceed in a single forum would allow for the most efficient management of discovery and would reduce the risk of inconsistent outcomes." *Modlin v. United Grocery Outlet, Inc.*, No. 1:21 CV 19 MR WCM, 2021 U.S. Dist. LEXIS 263289, at *20 (W.D.N.C. Apr. 14, 2021) (Metcalf, J.); *see also Tucker v. Massage Envy Franchising,* 584 F. Supp. 3d 174, 178 (E.D. Va. 2022) ("danger of parallel lawsuits…which may spawn inconsistent results and inefficient use of judicial resources.") Here, the sensible course of action is for Plaintiff to file a First Amended Complaint adding Level Up as a co-defendant. Then, the cycle of obstruction will break, the proverbial empty chair will be occupied, and the case can be litigated on the merits.

### B. Defendants' claims of "bad faith" are baseless.

In their opposition, Defendants insist Plaintiff is seeking to amend the complaint in "bad faith" in order to extend the class certification deadline. ECF No. 32 at 12-13. However, Plaintiff has already certified to the Court that while Defendants' and Level Up's refusal to produce documents will likely require an extension of the class certification deadline, Plaintiff will not use the motion to amend as a basis for that proposed extension. ECF No. 30-3, ¶ 32. Plaintiff will make the case for that extension separately and a motion to amend will not be part of

3

Plaintiff's argument. Accordingly, that preemptive accusation fails.

Moreover, Defendants separately argue that Plaintiff is acting in bad faith out of "retaliatory" motive toward Level Up for moving to quash the subpoena. (ECF No. 32, pp. 11-12.) Defendants' argument contains a host of internal inconsistencies, which become nonsensical when read in concert. In sum, Defendants and Level Up simultaneously contend:

> (1) Plaintiff should have sued Level Up from the start, based solely on a settlement-related communication from Defendants' in-house counsel (ECF No. 32, pp. 4-5), because:
>
> (2) Level Up is responsible for the calls at issue (and Defendants assert multiple affirmative defenses directed towards issues of third-party liability) (ECF No. 22 at 37-38), but;
>
> (3) the Court should *not* allow Plaintiff to add Level Up as a party to remedy that issue (ECF No. 32 at 13-14), despite Level Up refusing to produce requested discovery because it contends the burden of doing so is too great for a nonparty (ECF No. 30-9);
>
> (4) the Parties and the Court should nevertheless all assume that Level Up cannot produce the phone records Plaintiff seeks (ECF No. 32 at 14); and
>
> (5) Plaintiff can instead sue Level Up separately from this action, irrespective of claim-splitting issues. (*Id.* at 15.)

The internal inconsistencies underscore the need for Defendants *and* Level Up to address these issues in the same forum.

**C. Defendants' claim of undue delay is undercut by the record.**

Defendants go to great lengths to portray Plaintiff's desire to file an amended complaint as an act of procedural gamesmanship to extend deadlines and delay resolution of this matter. While claiming Plaintiff was not diligent, Defendants fail

4

to address the fact they had produced *zero* documents in discovery at the time Plaintiff moved to amend, and instead rested on over 100 pages of objections and assertions that categories of documents simply do not exist. (*See* ECF No. 30-4; 30-5.) Furthermore, Defendants omitted to disclose that they were working with Level Up while it was buying time, resisting the subpoenas and then moving to quash.

The timeline shows Plaintiff was diligent. On July 21, 2025, the Court issued its scheduling order. Two days later, on July 23, 2025, Plaintiff served a subpoena for documents and deposition testimony on Level Up. Two days after that, Plaintiff served written discovery on Defendants. ECF No. 30-3 at ¶ 8, 11. After receiving over 100 pages of objections and zero documents from Defendants, Plaintiff's counsel served a deficiency letter on October 1, 2025, and counsel have held numerous conferrals since. Further, on October 24, 2025, Level Up produced an unsigned contract involving persons in Pakistan who purportedly ran a call center, at Level Up's direction. *Id.* at ¶ 17. Then, three days later, Level Up abruptly moved to quash the subpoena, citing the burden in responding further as a "nonparty" to this litigation. *The next day*, Plaintiff's counsel emailed counsel for Defendants to confer regarding their consent or opposition to Plaintiff's request to file an amended complaint, to which Defendants' counsel thereafter requested a copy of the to-be-drafted motion and proposed complaint to determine if they would consent. *Id.* at ¶ 28. Plaintiff provided it on November 4, 2025, and on November 10, 2025,

5

Defendants confirmed that they would not consent to Plaintiff's request to amend. *Id.* at ¶¶ 27-28. The opposed motion was filed on November 13, 2025 – three days after counsel advised of Defendants' position. Plaintiff has acted with diligence.

In their opposition, Defendants also misleadingly suggest Plaintiff "waited over two years to try to add [Level Up] to this case." ECF No. 32 at 8-9. However, this lawsuit was filed in March of 2025. Discovery commenced on July 21, 2025, and the Motion to Amend was filed on November 13, 2025. In the Rule 15 context, "delay" refers to the time elapsed before seeking to amend the original pleading, not time before the filing the original complaint. Defendants' deceptive framing should not be well-taken. There was no undue delay in seeking amendment.

### D. Defendants' claim of prejudice is also unavailing.

Defendants claim that amendment would cause them undue prejudice as a result of the Court's forthcoming class certification deadline. ECF No. 32 at 14-15. First, this is not a motion to extend the class certification deadline – Plaintiff will make that case separately. However, even if an extension of the class certification deadline was somehow inherent to the motion to amend (which Plaintiff does not argue), Defendants initially proposed a deadline of **June 12, 2026**. ECF No. 24. The other supposed "prejudice" Defendants claim is summarized as "additional depositions, additional written discovery, and renewed motion practice." *See id.* at 14. First, that does not appear to even be true. Bennett is already seeking discovery

6

from Level Up, and Defendants and Level Up are clearly already working together on discovery and motion practice. Those activities would simply occur in one forum rather than two. However, even if amendment did somehow increase discovery and motion practice, those proceedings are part of litigation and do not constitute undue prejudice. As the District of Maryland explained on a motion to amend filed ten months after suit:

> [T]o be sure, the prospect of adding nine new defendants will render the case more complex on the whole. But the court strains to see how that amounts to prejudice… rather, it merely presents standard-issue complex civil litigation with the concomitant court and counsel case management challenges.

*Gilead Scis., Inc. v. Meritain Health, Inc.*, No. 2025 U.S. Dist. LEXIS 202050, at *5 (D. Md. Oct. 12, 2025). The same would be true here. Amendment would not prejudice Defendants.

### E. Defendants' response is replete with invective, improper citation to settlement communications, and misstatements of fact and law.

Defendants' opposition consists of various misrepresentations, personal invective, and improper conduct. First, Defendants falsely assert "**Plaintiff's counsel** sent Defendants a demand letter, seeking $10,000 to resolve the case." ECF No. 32 at 6 (emphasis added). However, "Plaintiff's counsel" never sent such a letter, as Plaintiff was acting *pro se* when writing to Defendants in 2023. *See* ECF 34-1, Ex. A. When Plaintiff's counsel pointed that out, Defendants' counsel acknowledged his statement was false (claiming a "scrivener's error"), but declined to correct the

7

record on the docket- at least as of the time of this filing. Ginsburg Decl. ¶ 27.

Equally problematic in the line referenced above – and again elsewhere in the brief – is defense counsel's insistence on highlighting the monetary details of a pre-litigation settlement demand, inapposite to the motion to amend. *See* ECF No. 32, pp. 4-5. While Federal Rule of Evidence 408 does not explicitly govern pleadings or motions, courts have repeatedly held it is improper to cite or attach settlement communications when not germane to the filing at issue. *See Sharestates Invs., LLC v. WFG Nat'l Title Ins*. Co., No. 1:23-CV-01416-JMC, 2023 U.S. Dist. LEXIS 215700, at *8 (D. Md. Dec. 5, 2023) (striking reference to settlement negotiations from pleading); *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.,* 227 F. App'x 239, 246-47 (4th Cir. 2007) (affirming district court's granting of a motion to strike paragraphs in a complaint that "detailed certain communications between the parties' attorneys made during settlement negotiations"). If Defendants wanted to point out Bennett was aware of Level Up and sent a demand letter (which no one disputes), it could have simply done so instead of needlessly citing to the monetary figures in their brief. Most disturbing is that the same litigation team (then at predecessor firm Kabat Chapman & Ozmer) – albeit different attorneys- were reprimanded for doing precisely that, also when opposing a motion to amend:

> The Court does not find the plaintiff's alleged settlement demand to have any relevance to this motion whatsoever. If the Court desires to know the parties' settlement posture, it will ask. **To the extent counsel intended this subtle hint at the parties' settlement negotiations to**

> **influence the Court's decision, defense counsel is hereby cautioned to avoid such improper behavior in the future.**

*Johnson v. Charter Commc'ns, Inc.*, No. 5:20-cv-2056-LCB, 2022 U.S. Dist. LEXIS 193677, at *3 (N.D. Ala. Oct. 24, 2022) (emphasis added). Regrettably, that "improper behavior" continues.

Moreover, unlike that *actual* reprimand, Defendants falsely assert that *Plaintiff's counsel* "have previously been reprimanded by at least one federal court for misusing the Federal Rules to seek a backdoor discovery extension." ECF No. 32 at 5, 13 (citing *Savada v. RRH Energy Servs., LLC*, Civil Action No. RDB-25-1156, 2025 U.S. Dist. LEXIS 212876 (D. Md. Oct. 29, 2025). Firstly, there was no reprimand of *any counsel* in that decision, nor was there discussion of "discovery extensions" or even Rule 15. Rather, when analyzing the first-to-file rule (inapposite to this matter), the court found Mr. Savada's claim was subsumed by two earlier filed class-actions. *Id.* Furthermore, neither of Plaintiff's current attorneys were even counsel in the *Savada* case. Rather, Mr. Ginsburg was counsel in one of the two previously-filed actions referenced therein,[3] *Nock v. PalmCo Admin, LLC*, 1:24-cv-00662 (D. Md.) Ginsburg Decl. ¶¶ 20-22. Of the several cross-filed documents with Ginsburg's signature block (which were filed in both the *Nock* case and *Savada*),

---

[3] Similar to this case, and the aforementioned *DeMya Johnson* case, the call center at issue in *Nock* and *Savada* cases, were also based in Pakistan, which has not signed the Hague Convention for civil service. For that reason, some American telemarketers hire Pakistani call centers because they can largely evade discovery.

those filings featured both the *Nock* and *Savada* captions, as the court and the parties were treating the matters as consolidated for the purpose of briefing schedules. Ginsburg Decl. ¶ 21. Defendants are citing an inapposite decision where no attorney was reprimanded and Plaintiff's counsel did not have an appearance, while falsely claiming Plaintiff's counsel was reprimanded in a similar circumstance to that before the Court. If the law and/or the facts were on Defendants' side here, they would not be grasping at straws in this manner.

Defendants also misrepresent the law. Specifically, Defendants claim the Court "can deny the motion [to amend] based on delay alone." ECF No. 32, at 10. However, the law has been settled for decades that the opposite is true: "[d]elay alone is an insufficient reason to deny leave" to amend under Rule 15. *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). The Court should not be persuaded by counsel's misstatements of the law and efforts to turn the Rule 15 analysis on its head.

Diversions and misdirection aside, Defendants offer no persuasive reason why Rule 15's liberal standard was not met.

**F. Conclusion.**

For all of these reasons, and those detailed in Plaintiff's moving papers, the Court should grant Plaintiff leave to file his First Amended Complaint.

Dated: November 26, 2025

Respectfully submitted,

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq. (phv)
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
jginsburg@creditlaw.com

*/s/ Alex D. Kruzyk*
Alex D. Kruzyk (phv)
PARDELL, KRUZYK & GIRIBALDO, PLLC
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
akruzyk@pkglegal.com

Mitchel Erik Luxenburg
The Law Firm of Mitch Luxenburg LLC
23875 Commerce Park Rd,
Beachwood, OH 44122
216-452-9301
mitch@mluxlaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all parties of record by CM/ECF on November 26, 2025.

/s/ Jacob U. Ginsburg
Jacob U. Ginsburg, Esq.